**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 95-5182

ANDREW LITTLEJOHN,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CR-94-286-S)

Submitted: November 7, 1995

Decided: March 18, 1996

Before NIEMEYER, HAMILTON, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William B. Purpura, Baltimore, Maryland, for Appellant. Lynne A.
Battaglia, United States Attorney, Maury S. Epner, Assistant United
States Attorney, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Andrew Littlejohn appeals the sentence imposed by the district court after a jury found him guilty of two counts of food stamp fraud in violation of 7 U.S.C.A. § 2024(b) (West 1988 & Supp. 1995), 18 U.S.C. § 2 (1988)* Because the district court's factual findings regarding the amount of loss and Littlejohn's role in the offense are not clearly erroneous and because the district court's refusal to depart is not reviewable, we affirm the judgment of the district court.

I. FACTS

From June until December 1993, Littlejohn worked at Shop and Save Meats, which consisted of two food stalls located at the Lafayette Market, an indoor space filled with numerous retail food businesses within the City of Baltimore. One of the Shop and Save stalls sold raw and processed meats, while the other, where Littlejohn worked, sold poultry and produce.

Shop and Save was operated by Cornell Crawford, one of Littlejohn's codefendants. Shop and Save was authorized to distribute and redeem food stamp benefits electronically. During his employment, Littlejohn joined with eight other employees to exchange in excess of $500,000 of food stamp benefits for cash.

Littlejohn admitted that he knew Shop and Save Meats illegally exchanged food stamp benefits for cash. He participated in the fraud by preparing five-dollar bags of meat, poultry, or produce. Food stamp participants who wanted to exchange their benefits for cash were required to purchase a five-dollar bag to give the appearance of

_____

*Littlejohn also was indicted on three additional counts of food stamp fraud, one count of conspiracy to commit food stamp fraud in violation of 18 U.S.C.A. § 371 (West 1966 & Supp. 1995), and one count of access device fraud in violation of 18 U.S.C.A.§ 1029(a)(2) (West Supp. 1995). The jury acquitted Littlejohn on the conspiracy and additional food stamp fraud counts, and the access device fraud count was dismissed on the Government's motion on the first day of trial.

2

a legitimate exchange of food items for food stamps. Other employees "herded" recipients to the grocery stalls, distributed cash from Crawford to the recipients, and handled the electronic transactions that credited benefits to Shop and Save. Littlejohn also attempted to learn how to operate the electronic terminal where the exchanges occurred. Moreover, Littlejohn received cash bonuses on days when large-scale food stamp trafficking took place. Finally, a videotape showed Littlejohn assembling the five-dollar bags and passing food stamp benefit cards to Crawford, who exchanged the cards for cash.

At sentencing, the district court found that Littlejohn's base offense level was six, and it enhanced the base offense level by ten levels to take into account the $500,000 loss. See United States Sentencing Comm'n, Guidelines Manual, § 2F1.1(a), (b)(1)(k) (Nov. 1993). The district court then increased Littlejohn's base offense level by another two levels, finding that Littlejohn was involved in more than minimal planning. See USSG § 1B1.1, comment. (n.1(f)), § 2F1.1(b)(2). The district court denied the Littlejohn's request for a reduction for role in the offense, finding that Littlejohn was not less culpable that most other participants in the fraud and declined to depart below the guideline range, finding no adequate reason for doing so. Based on a total offense level of eighteen and a criminal history category of II, the applicable guideline range was thirty to thirty-seven months imprisonment. See USSG § Ch. 5, Pt. A. The court sentenced Littlejohn to thirty months imprisonment on each count to run concurrently, ordered one year of supervised release, and imposed a $100 special assessment. This appeal followed.

II. ANALYSIS

A. Amount of loss

Littlejohn contends that the entire $500,000 of diverted food stamp benefits was not reasonably foreseeable to him. The district court's calculation of the amount of loss is a factual question reviewed under the clearly erroneous standard. United States v. Chatterji, 46 F.3d 1336, 1340 (4th Cir. 1995). Although Littlejohn claims that his acquittal on some counts should reduce the amount of loss attributable to him, we have held that misconduct not resulting in a conviction may be attributed to a defendant when determining loss as long as the

finding is supported by a preponderance of the evidence. United States v. Morgan, 942 F.2d 243, 246 (4th Cir. 1991), cert. denied, ___ U.S. ___, 61 U.S.L.W. 3479 (U.S. Jan. 11, 1993) (No. 92-6489). Here, Littlejohn admitted that he knew Shop and Save Meats illegally exchanged food stamp benefits for cash, and a videotape captured Littlejohn passing food stamp benefit cards to Crawford, who then exchanged the cards for cash. Further, Littlejohn participated in the fraud during the entire term of his employment with Shop and Save by preparing the five-dollar bags recipients were required to purchase in an effort to make the illegal exchange of benefits for cash appear legitimate. We therefore find that the district court did not clearly err in finding that the $500,000 loss was reasonably foreseeable to Littlejohn.

B. Role in offense

Next, Littlejohn claims that he should have received a reduction for his role in the offense because every other participant in the fraud had a greater role than he had. The district court's determination of a defendant's role in the offense is reviewable under the clearly erroneous standard. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). The district court found that a minor role reduction was not warranted because Littlejohn was not one of the least culpable defendants. Littlejohn had an important part in the transactions to exchange cash for food stamp benefits--he prepared the five-dollar bags for recipients who exchanged their benefits for cash, and he shared in the profits from the illegal activity. This finding is not clearly erroneous.

C. Refusal to depart

Finally, Littlejohn contends that the district court should have departed downward because his criminal history category was overstated. The district court's refusal to depart below the guideline range is not reviewable on appeal, unless the court mistakenly believes it lacks authority to depart. United States v. Dorsey, 61 F.3d 260, 263 (4th Cir. 1995) (citing United States v. Bayerle, 898 F.2d 28, 30-31 (4th Cir.), cert. denied, 498 U.S. 819 (1990)). We find that the district court was aware of its authority to depart and exercised its discretion in deciding that the circumstances did not warrant a departure. Therefore, this claim is not reviewable.

4

III. <u>CONCLUSION</u>

We affirm Littlejohn's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

5